HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MORRIS BYRD, an individual,

Plaintiff,

v.

HANSEN BEVERAGE COMPANY d/b/a MONSTER BEVERAGE CORPORATION, a Delaware Corporation; MONSTER ENERGY COMPANY, a Delaware Corporation; MONSTER ENERGY INTERNATIONAL COMPANY, a Delaware Corporation; and MONSTER ENERGY US, LLC, a Delaware Corporation,

Defendants.

MONSTER ENERGY COMPANY, a Delaware Corporation,

Third-Party Plaintiff,

v.

LEICHHARDT GROUP, INC., a Washington Corporation, dba THE DILLER ROOM; ALEKSANDAR LONCAR, an individual; JONASA RYDER, an individual, and DOES 1–10,

Third-Party Defendants.

Case No.  2:25-cv-00767-RAJ

ORDER

ORDER - 1

## I.    INTRODUCTION

THIS MATTER comes before the Court on Third-Party Defendants' Motion to Dismiss, Dkt. # 28.  The Court has reviewed the motion, the submissions in support of and in opposition to the motion, and the balance of the record.  For the reasons set forth below, the Court **GRANTS** the Third-Party Defendants' motion.

## II.    BACKGROUND

On March 27, 2022, a bar brawl broke out outside a bar called The Diller Room. Dkt. # 19 at 3–5.  The fight was between bar employees and bar patrons.  *Id.*  The bar employees involved in the fight were bartender Aleksandar Loncar, bouncer Morris Byrd, and bouncer Jonasa Ryder.  *Id.*  The patrons were employed by Monster Energy Company ("Monster").  Dkt. # 1-2 at 6.  While there were three Monster employees at the bar, only two of the three were involved in the fight: Ben Hysong and Bradley Hoagland.[1]  Dkt. # 19 at 3–5.

Plaintiff Byrd was injured in the fight and filed a civil complaint against Monster in King County Superior Court.  Dkt. # 1-2.  Mr. Byrd alleges that (1) Monster breached its duty by placing others in danger; (2) Monster breached its duty by placing its employee Mr. Hysong in a position to cause injuries; (3) Monster negligently allowed Mr. Hysong to continue his employ at Monster, which caused Mr. Byrd's injury and damages; (4) Monster negligently hired, trained, and supervised Mr. Hysong; and (5) Monster is vicariously liable for Mr. Hysong's conduct.  *Id.* at 8–9.

Monster filed a notice of removal, Dkt. # 1, and a Third-Party Complaint against Leichhardt Group, Inc., dba The Diller Room; Mr. Loncar; Mr. Ryder; and other unnamed Defendants.  Dkt. # 19.  In the Third-Party Complaint, Monster alleges (1) negligent hiring, training, supervision, and retention against The Diller Room and the

---

[1] The Third-Party Complaint does not contain allegations to show that Rhiana Coomara was involved.

ORDER - 2

unnamed Defendants; (2) negligence against The Diller Room and the unnamed Defendants; (3) negligence against Mr. Loncar, Mr. Ryder, and the unnamed Defendants; (4) contribution against all Third-Party Defendants; (5) apportionment against all Third-Party Defendants; and (6) comparative indemnity against all Third-Party Defendants. *Id.* at 5–10.

The Diller Room, Mr. Loncar, and Mr. Ryder filed a motion to dismiss the Third-Party Complaint, arguing that (1) Monster failed to state a claim upon which relief can be granted, and (2) they are immune under the Washington Industrial Insurance Act (IIA), Wash. Rev. Code §§ 51.04.010 *et seq.*[2] Dkt. # 28. Monster filed a response, Dkt. # 31, and the Third-Party Defendants filed a reply, Dkt. # 35. Without the Court's leave, Monster filed a "Supplemental Opposition to Motion to Dismiss," Dkt. # 61, and Third-Party Defendants filed a reply to the supplemental opposition, Dkt. # 63.

## III.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must point to factual allegations in the complaint that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The court may dismiss a complaint as a matter of law for '(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim.'" *SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)). In analyzing a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable

---

[2] Third-Party Defendants refer to this as the Washington Industrial Safety and Health Act ("WISHA"). *See* Dkt. # 28 at 4. However, WISHA is under Title 49, Chapter 49.17.

ORDER - 3

to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

## IV.   DISCUSSION

### A.   Employer Immunity Under the Industrial Insurance Act

The IIA "grant[s] injured employees 'swift, no-fault compensation' for on-the-job injuries and grant[s] employers immunity from civil suits arising from such injuries." *Cockrum v. C.H. Murphy/Clark-Ullman, Inc.*, 569 P.3d 287, 290 (Wash. 2025) (quoting *Birklid v. Boeing Co.*, 904 P.2d 278, 282 (Wash. 1995)).  RCW 51.04.010 provides:

> The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

Wash. Rev. Code § 51.04.010.  The IIA "bars all independent causes of action against the employer for damages arising out of unintentional injury to an employee." *Provost v. Puget Sound Power & Light Co.*, 696 P.2d 1238, 1239 (Wash. 1985).

The Washington Supreme Court has interpreted the IIA to immunize employers from claims by third parties that arise from an employee's on-the-job injury. *See Seattle-First Nat. Bank v. Shoreline Concrete Co.*, 588 P.2d 1308, 1316 (Wash. 1978).  In *Seattle-First*, the boom of a truck on which an employee was working came in contact with a power line, resulting in the employee's injury and death. *Id.* at 1311.  Seattle-First, as the employee's estate's personal representative, filed a lawsuit against the owner-operator of the truck and the boom manufacturer. *Id.*  These two defendants then filed

ORDER - 4

third-party complaints for indemnity, contribution, or apportionment against the employer. *Id.* The employer moved for summary judgment to dismiss the third-party complaints, arguing that the IIA barred the claims, and the trial court denied the motion. *Id.* On appeal, the Washington Supreme Court reversed the trial court ruling and explained that an "employer may no longer be looked to for recourse" when the employer pays its premiums pursuant to the IIA because the IIA fund "is the sole source of recovery." *Id.* at 1316. The court further explained that "[i]n effect, the Act 'immunizes', from judicial jurisdiction, all tort actions which are premised upon the 'fault' of the employer vis-a-vis the employee." *Id.* Therefore, the court held that (1) courts do not have jurisdiction over actions "premised upon or necessarily involving this 'immunized' area of tort law," (2) the employer's "fault may not be considered in the reduction" of damages, and (3) impleader of the employer "by third-parties cannot be used as a device to permit the court to assume jurisdiction over such conduct." *Id.*

The court also explained that an employer's voluntary assumption of "an independent duty or obligation to the third party" presents a different situation. *Id.* Even then, to be judicially cognizable, these claims cannot stem from immunized conduct and must be based only on independent obligations:

> Nonetheless, for these actions to be judicially cognizable, the third party's theory of Employer liability cannot stem from conduct "immunized" by the Act, E. g., that which necessarily involves the employer's conduct vis-a-vis the employee. Any such action must be based solely upon an independent obligation existing between the employer and the third-party claimant.

*Id.*

The court then addressed each claim as follows: (1) the noncontractual indemnity claims were not judicially cognizable insofar as they were "based upon the 'immunized' conduct of [the employer] vis-a-vis [the employee]"; and (2) the claims for contribution

ORDER - 5

or for an apportionment of liability based on "fault" of all defendants and third-party defendants were "not judicially cognizable insofar as they [were] delictual in nature and necessarily ar[o]se from the underlying 'immunized' conduct of [the employer] vis-a-vis [the employee]." *Id.*

Similarly, in a court of appeals case, which the Washington Supreme Court relied on in deciding *Seattle-First*, the court reached the same conclusion. *See Olch v. Pac. Press & Shear Co.*, 573 P.2d 1355, 1359 (Wash. Ct. App. 1978). In *Olch*, an employee was injured while operating a hydraulic power press. *Id.* at 1356. After receiving worker's compensation for the injury, the employee filed a lawsuit against both the manufacturer and the seller of the hydraulic power press, who in turn filed a third-party complaint and cross-claim against the employer for indemnity. *Id.* The employer then moved for summary judgment, arguing that the IIA was the exclusive remedy and barred actions for indemnity against employers covered by the IIA in the absence of an independent agreement to indemnify. *Id.* The court agreed that the IIA does bar such actions. *Id.* at 1357. However, the court explained that where "an independent duty or obligation is owed by the employer to a third party the exclusivity provisions of the workmen's compensation act will not bar recovery by the third party." *Id.*

The court's analysis thus shifted to "whether a contract of indemnification may be implied under [these] circumstances." *Id.* The court held that pursuant to the IIA, "the employer [was] not liable directly to the employee and no liability exist[ed] from the employer to the manufacturer-seller from the contract of sale." *Id.* at 1358. The court reasoned that independent duties "should not be implied to exist where the parties have not contracted for such duties expressly." *Id.* Further, before its use as a basis for indemnity against an employer, an alleged breach of the "independent duty must be shown to exist as a specific and defined duty." *Id.* The court did not find a duty of

ORDER - 6

indemnity and provided an example of a contract where such a duty could be implied. *Id.* at 1359. Therefore, the court held that the action involving the employer as a third-party defendant could not be maintained because the action "ar[o]se out of the employee's injury" and not "an independent duty or a contract of indemnity." *Id.*

Here, Monster's claims arise from the injuries sustained by Mr. Byrd, an employee of The Diller Room. Among the claims Monster asserts are claims for contribution, apportionment, and comparative indemnity. As in *Seattle-First*, these claims are premised on the immunized area of tort law under the IIA. *Seattle-First*, 588 P.2d at 1316. The noncontractual indemnity claim is not judicially cognizable because it is based on the immunized conduct of the employer vis-à-vis the employee. *Id.* Similarly, the contribution and apportionment claims are not judicially cognizable because they are "delictual in nature" and "necessarily arise from the underlying 'immunized' conduct" of the employer vis-à-vis the employee. *Id.*

Monster cites *Seattle-First* for the proposition that an exception exists "where an employer voluntarily assumes an independent duty or obligation to the third party." Dkt. # 31 at 8; *Seattle-First*, 558 P.2d at 1316. As Monster acknowledges, such an action must be based only on an independent obligation that exists between the employer and the third-party. Dkt. # 31 at 8; *Seattle-First*, 558 P.2d at 1316. Monster argues, that "an independent, special duty" existed between The Diller Room and Monster because Monster—through its employee Mr. Hysong—was an invitee at The Diller Room. Dkt. # 31 at 9. The Court finds this argument unpersuasive. *See* discussion *infra* Section IV.C. Importantly, the Court finds that this is not the kind of independent obligation that fits within the exception.

The independent obligation contemplated in *Seattle-First* is different from what Monster proposes. That case relied on *Olch* in stating that a different situation exists

ORDER - 7

"where an employer voluntarily assumes an independent duty or obligation to the third party." *Seattle-First*, 588 P.2d at 1316. The court in *Olch* explained that "third party actions against insured employers have been allowed when an express written contract of indemnification existed," and focused its analysis on whether indemnification may be implied. *Olch*, 573 P.2d at 1357; *see also Hatch v. City of Algona*, 167 P.3d 1175, 1179–80 (Wash. Ct. App. 2007) (holding that no effective waiver of immunity under the IIA existed in the contract between the employer and the third-party because the employer did not clearly express its intent to waive its immunity under the IIA). The court in *Seattle-First* emphasized that even where the employer voluntarily assumes an independent obligation to the third party, the third party's theory of liability "cannot stem from conduct 'immunized' by the" IIA and it "must be based solely upon an independent obligation existing between the employer and the third-party claimant." *Seattle-First*, 588 P.2d at 1316. Here, not only is there not a contract between Monster and The Diller Room, Monster's theory of liability is also not independent and stems from The Diller Room's immunized conduct. Therefore, this argument fails to rescue Monster's claims. For these reasons, Monster's claims for indemnification, contribution, and apportionment are dismissed.

In addition to the claims for indemnification, contribution, and apportionment, Monster also makes claims against The Diller Room for negligence and negligent hiring, training, supervision, and retention. These claims relate to the fault of The Diller Room, stem from immunized conduct, and are not based only on an independent obligation to Monster. *Id.*; *see also Montoya v. Greenway Aluminum Co.*, 519 P.2d 22, 27 (Wash. Ct. App. 1974) (applying an older version of the IIA and holding that "liability for fault . . . should not be reimposed by an allegation of negligence against the employer coming from a third party."). Therefore, these claims are dismissed as well.

ORDER - 8

**B.      Fellow Employee Immunity Under the Industrial Insurance Act**

Under the IIA, "co-workers are immune from common law suit by an injured worker." *Daniels v. Seattle Seahawks*, 968 P.2d 883, 886 (Wash. Ct. App. 1998). The IIA provides that an injured employee "shall receive compensation in accordance with this chapter, and, except as in this title otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever." Wash. Rev. Code § 51.32.010. An exception that allows an injured employee to seek recovery of damages for an injury from a third-party exists. RCW 51.24.030(1) provides:

> If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker or beneficiary may elect to seek damages from the third person.

Wash. Rev. Code § 51.24.030(1). Thus, the IIA permits an injured employee to seek recovery of damages from a third-party who is not a fellow employee.

Here, Mr. Byrd is seeking to hold liable and to recover damages from Monster, a third party, who in turn is seeking to hold liable and to recover damages from Mr. Loncar and Mr. Ryder, who are Mr. Byrd's coworkers. *See generally* Dkt. # 19. The IIA specifically immunizes coworkers from liability as evidenced by the requirement that the third-party not be "in a worker's same employ." Wash. Rev. Code § 51.24.030(1); *see also Romanick v. Aetna Cas. & Sur. Co.*, 795 P.2d 728, 730 (Wash. Ct. App. 1990) (holding that injured employee cannot recover UIM benefits as a result of injury caused by coworker and that "RCW 51.04.010 abolishes claims against fellow servants for injuries incurred during the course of hazardous employment"); *Orris v. Lingley*, 288 P.3d 1159, 1162 (Wash. Ct. App. 2012) (explaining that an injured employee "would ordinarily be unable to bring a third party action against" another employee in the same employ, unless the negligent employee was not acting in the course of employment at the

ORDER - 9

time of the injury); *Provost*, 696 P.2d at 1240 ("The exclusive remedy provisions of RCW 51.32.010 also apply to bar common-law actions against fellow employees.").

Because the IIA specifically provides that an injured employee may not hold fellow employees liable for workplace injury, holding Mr. Loncar and Mr. Ryder liable as third-party defendants would contravene the immunity provided by the IIA. Monster may not work around the IIA to hold Mr. Byrd's fellow employees liable just like it may not work around the IIA to hold The Diller Room liable. Therefore, Monster's claims against Mr. Loncar and Mr. Ryder are barred by the IIA and are accordingly dismissed.

## C.    Monster Fails to State a Claim Upon which Relief can be Granted

Monster also fails to state a cognizable claim in its Third-Party Complaint for its negligence-based claims (claims 1–3).[3] In its response to the motion to dismiss, Monster argues that it was an invitee at The Diller Room because Mr. Byrd alleges that Monster is vicariously liable for his injuries due to Monster's employees' conduct at The Diller Room. *See* Dkt. # 31 at 6–9. Monster further argues that "vicarious liability remains not only at issue, but front and center," and unless Mr. Byrd's claims against Monster are dismissed, "Monster remains allegedly in the Diller Room and in Hysong's shoes." *Id.* at 7. Monster does not cite any cases to support its theory that an entity-employer may be considered an invitee through its human employee's presence on the premises. Even if that were possible, Monster "denies that Hysong was in the course and scope of his employment while out drinking at a bar at 2:00 a.m." *Id.* at 7.

---

[3] The Third-Party Defendants primarily argue Monster fails to state a claim because "there are no allegations in Monster's Complaint that the Diller Room committed any acts or omissions against Monster." Dkt. # 28 at 5. This argument applies only to the negligence-based claims because the remaining claims for contribution, apportionment, and comparative indemnity do not require a direct harm to Monster. The Third-Party Defendants also argue "Monster's claims for 'Apportionment' and 'Comparative Indemnity' are not valid claims under Washington law, but they provide no case citation in support of this position. *Id.* at 6. Because the Court is dismissing the apportionment and indemnity claims on other grounds, it declines to reach this issue.

ORDER - 10

Additionally, Monster's argument that it was "allegedly in the Diller Room and in Hysong's shoes" because Mr. Byrd seeks to hold Monster vicariously liable for his injuries is unpersuasive. *Id.* Vicarious liability "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf within the scope of employment." *Garrison v. Sagepoint Fin., Inc.*, 345 P.3d 792, 810 (Wash. Ct. App. 2015). In other words, vicarious liability is a theory used to hold an employer liable for the acts of its employee; it is not a theory used to treat an employer as though it was in the location where the tort occurred because its employee was at that location. Thus, Monster fails to state a cognizable claim for its negligence-based claims and those claims are dismissed.

### D.    The Parties' Supplemental Briefs

Monster and the Third-Party Defendants filed supplemental briefs. On February 25, 2026, the Court received Monster's supplemental response, Dkt. # 61. On March 4, 2026, the Court received Third-Party Defendants' reply to the supplemental response, Dkt. # 63. Neither one of these filings is appropriate because the Parties did not seek the Court's leave. *See Leong v. Potter*, 347 F.3d 1117, 1125 (9th Cir. 2003) (holding that the district court did not abuse its discretion when it granted a motion to strike a request for an adverse inference made in a supplemental brief because the brief was over-length and filed late, and the party that filed the brief "did not seek leave to file the supplemental brief."). Therefore, the Court need not consider the supplemental briefs.

However, even if the Court were to consider the supplemental briefs, the Court's decision would not change. In its supplemental response, Monster explains that, through discovery, it discovered new evidence showing that Mr. Byrd did not "clock in" on the night of the fight. *See generally* Dkt. # 61. Monster argues that this new evidence makes immunity under the IIA inapplicable. *Id.* The Court need not decide whether the newly

ORDER - 11

discovered evidence impacts the resolution of the motion to dismiss because a court generally limits its review "to the complaint's 'face' because, '[a]s a general rule, [it] may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (quoting *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011)).

In addition, the mere fact that Mr. Byrd did not "clock in" does not change the result of this order. "The IIA provides workers' compensation benefits to '[e]ach worker injured in *the course of his or her employment*' while immunizing the employer from responsibility." *Entila v. Cook*, 386 P.3d 1099, 1101 (Wash. 2017) (alteration in original) (emphasis added) (quoting Wash. Rev. Code § 51.32.010). The statute defines "course of employment," in relevant part, as "acting at his or her employer's direction or in the furtherance of his or her employer's business . . . ." Wash. Rev. Code § 51.08.013(1). The Third-Party Complaint alleges Mr. Byrd "was one of two bouncers working at The Diller Room" on the night of the incident. Dkt. # 19 at 3. It further alleges that as Mr. Loncar removed Mr. Hysong and others from the bar, he stated he would give Mr. Hysong's credit card to Mr. Byrd to return to the group. *Id.* Once the bar patrons were outside, Mr. Byrd, at the bar patrons' request, delivered messages back and forth between them and Mr. Loncar regarding the credit card. *Id.* at 4. These allegations depict the actions of an individual carrying out his duties as a bouncer and acting in furtherance of The Diller Room's business. Monster cites no case for the proposition that IIA immunity applies only if the employee is literally "clocked in" at the time of the injury.[4] Therefore,

---

[4] Monster cites *Entila*, which states "a worker is eligible for workers' compensation benefits not only when they are 'on the clock,' it also encompasses the time going to and from work on the jobsite . . . ." 386 P.3d at 1101. The Court does not read the *Entila* court's use of the term "on the clock" as meaning the employee must literally be "clocked in." Rather, the use of that term is meant to contrast the time spent working versus time going to and from work.

ORDER - 12

the newly discovered evidence does not rescue Monster's Third-Party Complaint from dismissal.

### E.    Leave to Amend

Monster requests leave to amend as alternative relief in its supplemental response. Dkt. # 61 at 6.  A party may amend its pleading with the court's leave.  Fed. R. Civ. Pro. 15(a)(2).  However, a district court may deny a request for leave to amend if "it is clear . . . that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).  Assuming, arguendo, the Court accepts Monster's supplemental brief for purposes of considering the request for leave to amend, Monster still would not be able to cure the existing deficiencies.  First, as explained above, The Third-Party Complaint alleges facts demonstrating Mr. Byrd was acting in the course of his employment on the night of the incident, thus triggering IIA immunity.  *See* discussion *supra* Section IV.D.  Monster cannot plead new facts consistent with the existing allegations to bring its claims outside the scope of IIA immunity.  Second, Monster's negligence claims rest on the assumption that it was injured by the conduct of the Third-Party Defendants in relation to Monster's employees. This argument is based on Monster's theory that it was an invitee because its employee, Mr. Hysong, was an invitee at the bar.  As explained above, this argument fails.  *See* discussion *supra* Section IV.C.  This deficiency also cannot be cured by amendment and leave to amend for Monster's negligence claims is denied for this additional and independent reason.

As a separate matter, the Court notes that Third-Party Defendants footnoted all their citations in the motion to dismiss, Dkt. #28, the reply in support of the motion, Dkt. # 35, and the reply to Monster's supplemental response, Dkt. # 63.  The Court strongly disfavors footnoted citations and legal arguments, as they serve as an end-run around

ORDER - 13

page limits and formatting requirements dictated by the Local Rules. *See* Local Civil Rules, W.D. Wash. LCR 7(e). Additionally, the Court's Standing Order requires citations to "be included in the body of the briefing − the Court does not allow citations in footnotes or endnotes." Dkt. # 7. Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, 2014 WL 289924, at *1 n.1 (D. Ariz. Jan. 24, 2014); *see also Clark v. Louisville-Jefferson Cnty. Metro Gov't, Kentucky*, 2024 WL 56938, *3 (W.D. Ky. Jan. 4, 2024). The Court strongly discourages the parties from footnoting their legal citations or arguments in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899, 899–900 (9th Cir. 1994).

### V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Third-Party Defendants' motion to dismiss, Dkt. # 28, and **DISMISSES** the Third-Party Complaint **WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**.

Dated this 7th day of April, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER - 14